# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| CAUDILL SEED & WAREHOUSE CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:15-cv-00004-TWP-TAB |
| | ) |
| MARK D. ROSE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| MMR FARMS LLC, | ) |
| | ) |
| Interested Party. | ) |

## ENTRY ON DEFENDANT'S AND INTERESTED PARTY'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON MOTION TO AVOID FRAUDULENT CONVEYANCES

This matter is before the Court on Defendant Mark D. Rose's ("Rose"), and Interested Party MMR Farms LLC's ("MMR Farms")[1], Objections to Magistrate Judge's Recommended Disposition on Motion to Avoid Fraudulent Conveyances (the "Order"). (Filing No. 66.) Plaintiff Caudill Seed & Warehouse Co. ("Caudill Seed"), initiated proceedings supplemental, seeking to pursue property that Rose fraudulently conveyed to MMR Farms, in order to satisfy a post-bankruptcy judgment against Rose. (Filing No. 54.) On April 18, 2016, the Magistrate Judge entered an Order granting Caudill Seed's Motion to Avoid Fraudulent Conveyances. (Filing No. 60.) Rose and MMR Farms filed objections to the Order fourteen days later, on May 2, 2016,

---

[1] Although MMR Farms has included garnishee defendants Mark Matthew Rose and Martha Rose as "Respondents" in his Objection, counsel has not entered an appearance for Mark Matthew Rose or Martha Rose. An appearance for only MMR Farms has been filed in this action. (Filing No. 71.) Thus, MMR Farms is the only Interested Party of record. Accordingly, the Court addresses only MMR Farms in this order. Mark Matthew Rose has claimed 100% ownership of MMR Farms (Filing No. 73-1), and Martha Rose is a garnishee defendant, therefore, they are subject to the jurisdiction of the court in this matter. However, the Court had not included them as parties to the objection.

asserting that the Magistrate Judge erred. (Filing No. 65.) For the following reasons, the Court **OVERRULES** Rose's and MMR Farms' Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation.

## I.  BACKGROUND

In 1996, Rose created Rose Seeding and Sodding, Inc. to conduct his farming business. (Filing No. 54 at 5.) Mark Matthew Rose ("Matt"), Rose's teenage son, began working for Rose during this time. *Id*. In late 2008, Rose purchased grass seed on credit for his farming operations from Caudill Seed. *Id.* at 4. Thereafter, Rose's business began to decline dramatically. *Id.* at 5. Rose defaulted on his payment terms with Caudill Seed, and in July 2009, Caudill Seed commenced litigation against Rose for breach of contract. *Id.*

During the litigation proceedings, on October 19, 2009, Matt formed MMR Farms. *Id.* at 6. Rose and Matt collectively opened a bank account for MMR Farms with First Harrison Bank on November 25, 2009. *Id.* Both Rose and Matt are authorized signers on the account. *Id.* In 2010, as litigation with Caudill Seed continued, Rose transferred approximately 440 acres of real property to MMR Farms without consideration. *Id.* at 7. Caudill Seed obtained summary judgment on December 23, 2010, requiring Rose to pay Caudill Seed $152,646.76, plus ongoing interest. (Filing No. 1 at 2.)

On May 20, 2011, Rose filed Chapter 7 bankruptcy. (Filing No. 56 at 2.) Thereafter, on September 8, 2011, Caudill Seed initiated adversary proceedings in Rose's bankruptcy case, asserting that Rose should be denied a discharge under § 727(a)(2) because Rose transferred property to insiders within a year of filing bankruptcy in order to hinder, delay, or defraud creditors. (Filing No. 56-1 at 4.) On December 28, 2012, the Trustee filed a Motion to Compromise and Settle certain claims the bankruptcy estate had against Rose, Matt, and MMR

2

Farms, among others. (Filing No. 56-5.) The Trustee agreed to dismiss claims asserted by the Trustee against Rose, Matt and MMR Farms if they paid $100,000.00 to the Trustee. *Id.* at 2-3. On January 16, 2013, Caudill Seed objected to the Trustee's motion, asserting that the Trustee's proposed compromise and settlement was not in the best interest of the unsecured creditors and Rose should not obtain a discharge. (Filing No. 56-6.) On February 4, 2013, the Bankruptcy Court granted the Trustee's proposed settlement. (Filing No. 56-8.)

Thereafter, on April 18 and April 19, 2013, the Bankruptcy Court conducted a trial on Caudill Seed's adversary proceedings against Rose. (Filing No. 1 at 2; Filing No. 56-10.) On February 27, 2014, the Bankruptcy Court entered judgment denying discharge pursuant to § 727(a)(2) because Rose failed to rebut the presumption of fraudulent intent in his transferring of property to MMR Farms and other entities for no consideration, prior to the bankruptcy filing. *Id*. On May 27, 2014, the Bankruptcy Court then conducted a settlement conference resulting in Rose and Caudill Seed entering into a Reaffirmation Agreement. (Filing No. 1 at 2-3.) The Reaffirmation Agreement specified that Rose agreed to pay Caudill Seed a total of $100,000.00 but, if Rose defaulted on the scheduled payments, Caudill Seed was entitled to judgment against Rose in the sum of $300,000.00 minus any previously tendered payments. (Filing No. 1-1 at 7.) The Reaffirmation Agreement was filed with the Bankruptcy Court on June 5, 2014. (Filing No. 1-1.) On June 20, 2014, the Bankruptcy Court vacated its prior judgment denying discharge and entered an order granting Rose's discharge. (Filing No. 56-11.) On June 30, 2014, Rose delivered the initial installment of $15,000.00 to Caudill Seed, as required by the Reaffirmation Agreement, but has since refused to pay any additional sums. (Filing No. 1 at 3.)

On January 9, 2015, Caudill Seed filed the underlying action against Rose, asserting default on the Reaffirmation Agreement. (Filing No. 1.) On June 26, 2015, this Court entered default

3

judgment against Rose, holding that Rose owed Caudill Seed $285,000.00 plus 3.5% annual interest beginning November 30, 2014. (Filing No. 19.) Rose failed to tender any payment to Caudill Seed, and on January 4, 2016, Caudill Seed filed a Complaint seeking to avoid the fraudulent conveyances Rose made to MMR Farms and other entities. (Filing No. 54.) On February 5, 2016, Rose and MMR Farms filed a joint response, asserting only issue preclusion and that Caudill Seed lacks standing. (Filing No. 56.)

On April 18, 2016, the Magistrate Judge entered an Order granting Caudill Seed's Motion to Avoid Fraudulent Conveyances, holding that the doctrine of issue preclusion does not apply and Caudill Seed may properly enforce a post-bankruptcy judgment. (Filing No. 60.) Rose now appeals the Magistrate Judge's decision. (Filing No. 66.)

## II.  LEGAL STANDARD

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact." *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur,* 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). After a magistrate judge makes a report and recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions. 28 U.S.C. § 636(b)(1). Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

4

### III. DISCUSSION

Rose and MMR Farms object to the Order on several grounds. They rely on *Matter of Leonard,* 125 F.3d 543, 544 (7th Cir. 1997), when asserting that Caudill Seed lacks standing and objecting to the Magistrate Judge's finding that Caudill Seed has standing to bring a fraudulent conveyance claim without permission from the Bankruptcy Court. Rose and MMR Farms further contend that the Magistrate Judge erred in concluding that the doctrine of issue preclusion does not apply. They also assert, and Caudill Seed does not dispute, that the Order is dispositive and should be characterized as a report and recommendation subject to a *de novo* review. The Court agrees with the final assertion and reviews the Order *de novo*. *See* Fed. R. Civ. P. 72(b).

**A.    Standing**

Rose and MMR Farms rely on the Bankruptcy Court's ruling when objecting to the Magistrate Judge's conclusion that Caudill Seed has standing. Prior to denying Rose's discharge, the bankruptcy judge stated,

> As to the claims under sections 542 and 548, the Plaintiff is foreclosed from seeking avoidance or recovery of any alleged prepetition transfers because, as previously held by the Court, only the Trustee has standing to bring those claims as representative of the creditor body. All of those claims were settled and released by the Trustee prior to trial and the creditors are now bound by that settlement. Thus Plaintiff's only remaining claim is an objection to Debtor's discharge under section 727.

([Filing No. 56-10 at 3](#).) Rose and MMR Farms assert that Caudill Seed lacks standing and that the Bankruptcy Court was correct when stating that only the Trustee has standing to bring fraudulent conveyance claims regarding prepetition transfers. Rose and MMR Farms argue that any fraudulent conveyance claim held by Caudill Seed became the Trustee's upon the filing of the bankruptcy petition on May 20, 2011. They further argue that the Trustee utilized its power to

usurp any fraudulent conveyance claim pursuant to § 544(b) when the Trustee settled his claims against Rose and MMR Farms. "Section 544(b) of the Bankruptcy Code of 1978 gives the Trustee the power to 'avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by [an unsecured creditor].'" *Leonard*, 125 F.3d at 544 (citing 11 U.S.C. § 544(b)). "In other words, if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate." *Id.*

The Magistrate Judge concluded that Caudill Seed has standing because Caudill Seed initiated its proceedings supplemental to seek enforcement of a post-bankruptcy judgment, rather than a pre-bankruptcy judgment. The Order further states that Rose's reliance on *Leonard* is misplaced. The Order explains that the key difference in *Leonard* is that the creditor there tried enforcing a pre-bankruptcy judgment rather that a post-bankruptcy judgment. The Order concluded that once Rose executed the Reaffirmation Agreement with Caudill Seed and received his bankruptcy discharge, Caudill Seed became a post-bankruptcy creditor and was free to obtain a judgment for Rose's default on the Reaffirmation Agreement.

Rose and MMR Farms argue in the alternative that Caudill Seed has standing to bring a fraudulent conveyance action only if it obtained derivative standing, which Caudill Seed did not obtain. Derivative standing "allow[s] creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee." *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13 (2000). "If a trustee unjustifiably refuses a demand to bring an action to enforce a colorable claim of a creditor, the creditor may obtain the permission of the bankruptcy court to bring the action in place of, and in the name of, the trustee. In such a suit, the creditor corresponds to the shareholder, and the trustee

to management, in a shareholder derivative action." *Fogel v. Zell*, 221 F.3d 955, 965-66 (7th Cir. 2000).

The Court finds that Caudill Seed has standing to bring a post-bankruptcy fraudulent conveyance suit without obtaining derivative standing. *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) (holding that a trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and a creditor may step in (or resume actions) when the trustee no longer has a viable cause of action). *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 313 (S.D.N.Y. 2013), *aff'd,* 818 F.3d 98 (2d Cir. 2016) (holding that a statute barring trustee from avoiding transfers that were settlement payments did not prohibit a creditor from initiating fraudulent conveyance claims). Caudill Seed initiated proceedings supplemental seeking to levy execution on Rose's property to satisfy its post-bankruptcy claim for $285,000.00 plus 3.5% annual interest. Under Indiana law, a creditor may initiate an action for relief against a debtor's fraudulent conveyance to obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Ind. Code § 32-18-2-17(a)(1) (2016). "If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court orders, may levy execution on the asset transferred or its proceeds." *Id*. § 32-18-2-17(b). Accordingly, Rose and MMR Farms' objection to the Order regarding standing is **overruled**.

### B.   Issue Preclusion

Rose and MMR Farms also object to the Magistrate Judge concluding that the doctrine of issue preclusion does not apply and finding that the Bankruptcy Court did not make a determination regarding whether there existed any fraudulent conveyances. "The doctrine of issue preclusion 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of

a different claim.'" *Bernstein v. Bankert,* 733 F.3d 190, 225 (7th Cir. 2013) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)).  Issue preclusion applies only when the same issue is involved in two proceedings and the issue was previously determined by a "valid and final judgment." *Id.* (citing *Bobby v. Bies,* 556 U.S. 825, 834 (2009)).

Rose and MMR Farms argue that the Trustee settled[2] all fraudulent conveyance claims against them after conducting an independent investigation regarding Rose's transfers and finding that Rose fully disclosed each of the transfers.  They contend that even if Caudill Seed was able to raise fraudulent conveyance claims after the Trustee's settlement, Caudill Seed would still be bound by the final determination of the Bankruptcy Court.  Rose and MMR Farms assert that on April 14, 2014, the parties litigated whether there existed any equity in the property conveyed to MMR Farms.  They allege that at the conclusion of litigation, the Bankruptcy Court determined on the merits that Caudill Seed failed to carry its burden of proof on the issue.

The Magistrate Judge concluded that issue preclusion does not apply, despite the Trustee similarly bringing an action against Rose to avoid fraudulent conveyances on many of the same assets, because the Bankruptcy Court made no determination or judgment on the issue of fraudulent conveyances.  The Order explains that the Bankruptcy Court simply approved the Trustee's settlement asserting only that it was in the best interest of the bankruptcy estate.

The Court finds that the Trustee's settlement did not preclude Caudill Seed from bringing an action against Rose and MMR Farms to avoid the fraudulent conveyances.  As the Magistrate Judge correctly concluded, the Bankruptcy Court did not make a final judgment regarding the issue of fraudulent conveyance and ruled only that the settlement was in the best interest of the estate.

---

[2]The settlement stated that Rose was to pay the sum of $100,000.00 in two (2) equal installments: the first installment in the amount of $50,000.00 to the Trustee by January 15, 2013, and the second installment in the amount of $50,000.00 to be paid on or before June 1, 2013. Upon receipt of the entire $100,000.00, the Trustee shall dismiss the claims asserted by the Trustee in the Amended Complaint.  (Filing No. 56-5 at 2-3.)

The Bankruptcy Court also did not determine whether there was any equity in the property transferred to the MMR Farms. When issuing a discharge of Rose's debt, the Bankruptcy Court ruled only that Caudill Seed failed to establish by a preponderance of the evidence that Rose possessed the actual intent to defraud under § 727, reasoning that it was "as likely as not that Rose acted without actual intent." (Filing No. 56-11 at 5.) "If a judgment does not depend on a given determination, relitigation of that determination is not precluded." *Bobby v. Bies*, 556 U.S. 825, 834 (2009). The Bankruptcy Court's finding that Caudill Seed failed to meet its burden of proof did not depend on the Bankruptcy Court determining whether Rose's property had equity or was fraudulently transferred.

The Magistrate Judge concluded in the alternative, that even if issue preclusion applies, Rose's argument fails to address property that Rose transferred after the Trustee's settlement agreement. The Trustee's settlement did not include: (1) Rose's residence and estate, transferred to Matt and Martha on January 14, 2014, (2) a twenty-three acre tract of land located in Scott County, transferred to MMR Farms LLC on October 23, 2013, or (3) the personal property itemized on MMR Farms LLC's 2014 Federal Asset Report. (Filing No. 57 at 6; Filing No. 54-37; Filing No. 54-40; Filing No. 54-41; Filing No. 54-42.) The Court agrees with this conclusion.

Accordingly, the Court finds that issue preclusion does not apply because the Bankruptcy Court did not reach a final judgement regarding Rose's fraudulent transfers, and even if issue preclusion applies, it does not preclude Caudill Seed from avoiding transferred properties that were not subject to the Trustee's settlement.

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Rose's and MMR Farms LLC's Objections (Filing No. 66) and **ADOPTS the Report and Recommendation** contained in the Magistrate Judge's Order (Filing No. 60).

**SO ORDERED.**

Date: 11/4/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott C. Byrd
SCBYRD LAW FIRM
scottbyrd@scbyrdlaw.com

Neil C. Bordy
SEILLER WALTERMAN LLC
bordy@derbycitylaw.com